ROBERTSON, Presiding Judge.
This is a custody modification case.
On July 23, 1992, C.A.B. (father) filed a petition in the Mobile County Circuit Court, Juvenile Division, to determine the paternity and custody of E.A.B., a seven-month-old infant boy. The father’s petition alleged that E.A.B. was born to C.B.B. (mother) in December 1991, and that the minor child was residing with the mother. In his petition, the father acknowledged that he was the father of the minor child and requested that he be awarded custody of the minor child.
On September 14, 1992, following an ore tenus proceeding, the trial court entered a judgment, finding C.A.B. to be the father of the minor child; however, the trial court denied the father’s petition for custody. The trial court awarded custody of the minor *944 child to the mother and awarded the father certain visitation rights. The trial court also ordered the father to pay child support to the mother in the amount of $251 per month.
On December 2, 1992, the father filed a petition to modify the custody order of September 14, 1992, seeking custody of the minor child because of a material change in circumstances. On February 8,1993, following an ore tenus proceeding on February 5, 1993, the trial court entered a judgment, awarding custody of the minor child to the father, suspending the father’s child support obligation, and awarding the mother visitation on alternate weekends. The trial court also ordered the mother to attend alcohol and substance abuse counseling and to submit to a psychological evaluation. The trial court set the case for review on June 4,1993.
On June 14, 1993, following an ore tenus proceeding on June 10, 1993, the trial court entered a judgment, returning custody of the minor child to the mother, awarding the father certain visitation rights, and ordering the father to pay child support in the amount of $251 per month.
The father appeals, contending that the trial court erred in its determination of custody.
It is well-established law in Alabama that once a parent has been awarded custody of a child, the noncustodial parent seeking a change in custody has the heavy burden of proving that a change of custody would materially promote the child’s best interests and welfare and that the benefits of such a change would outweigh the disruptive effect caused by the change. Ex parte McLendon, 455 So.2d 863 (Ala.1984); Powell v. Boyd, 601 So.2d 1039 (Ala.Civ.App.1992). It is also well established that the judgment of the trial court as to child custody following an ore tenus proceeding is presumed correct and will not be disturbed on appeal unless it is unsupported by the evidence so as to be plainly and palpably wrong or an abuse of discretion. Powell, supra.
The record reflects that in the February 5, 1993, hearing the mother’s 12-year-old daughter (who is not the daughter of C.A.B.) testified that after she went to live with her mother, they moved seven times in one year. The daughter also testified that she had missed 11 days of school in the first semester because her mother made her stay at home to babysit E.A.B., her youngest half-brother (she has another half-brother and a half-sister), and that as a result of the days that she missed, her grades were C’s and D’s. The daughter further testified that her mother’s boyfriend lived with them and that she had seen him hit her brothers. She also testified that her mother drank alcohol and that she had seen her mother smoke marijuana. The daughter testified that her mother would go out a few nights each week and that most of the time, she was left in charge of her younger brothers and sister. She further testified that she had seen her mother in physical fights with men and women. The record reflects that at the time of the hearing, the mother’s 12-year-old daughter was living with her father and that she was making A’s and B’s in school.
The mother’s grandmother, F.M., testified that the mother had in the past lived with her and her husband, and that she took care of the minor children when they lived with her. The grandmother testified that she and her husband had many times assisted the mother financially with rent, utilities, and court fines. The grandmother also testified that she had smelled alcohol on the mother, that she had seen the mother drunk on many occasions, and that she had seen a cabinet full of vodka bottles in the mother’s house when she was babysitting the minor children. The grandmother further testified that she had seen marijuana butts in ashtrays in the mother’s house and when she asked the mother about the marijuana butts, the mother’s only response was to empty the ashtray. The grandmother also testified that on numerous occasions when she would call the mother’s house to check on the minor children, the mother would not be at home and the minor children would not know where she was. The grandmother also testified that the father took good care of E.A.B. and that she was concerned about the minor child’s welfare if he stayed with his mother.
M.D., a friend of the mother, testified that she had been to the mother’s house on two *945 occasions, once in the evening and once in the early morning, and that on both occasions she had found the mother’s 12-year-old daughter alone with her brothers and sister. R.M.R., the father of the mother’s 12-year-old daughter, testified that he had been married to the mother and that he saw her every other weekend when he went to pick up their daughter for visitation. R.M.R. further testified that the mother was drunk quite often when he went to her house and that he had seen her smoke marijuana cigarettes. R.M.R. also testified that when he would go to the mother’s house, he would see E.A.B., his brother, and his sisters, and they would be dirty.
The father testified that when he would pick up E.A.B. for visitation, he would be dirty and would have bruises about his body. The father also testified that he took the minor child to the doctor when he was sick, when he found a big knot on the minor child’s head, and when he found a big cut on the minor child’s leg. The father further testified that he had seen the mother drunk on many occasions and that he had seen her drinking every weekend that he went to pick up the minor child. The record reflects that this evidence resulted in the award of custody of the minor child to the father.
In the subsequent hearing on June 10, 1993, the mother’s grandmother testified that the mother was no longer drinking, that the mother had changed her life around, and that the mother would now be a good mother to the minor child. C.A.T., Jr., the mother’s landlord, testified that the mother was a changed person, that she stays at home more than she used to, and that she stays with the minor children when they visit her.
The mother testified that she had married her boyfriend, that both of them had good jobs, and that she was no longer drinking or going out at night. The mother did admit in her testimony that she had been involved in some misconduct or neglect of her children before the February hearing and that she did not currently have any of her children living with her. The mother further testified that it had been hard without her children and that she loves and can care for E.A.B. She also testified that the father had taken good care of the minor child and that she did not have any complaints about the father’s care of the minor child. The mother also testified that the reason that the minor child should not stay with the father was because he needs his mother and she wants the minor child home with her.
C.E.B., the pastor at the church the father attends, testified that the father regularly attends church, that he had missed two or three Sundays because of work, and that he brings the minor child to church with him. C.E.B. also testified that the minor child appears well cared for and that everything indicates that the father takes good care of the minor child. The father’s sister testified that she watches the minor child when the father is at work and that the minor child appears happy and well taken care of. The father testified that he takes the minor child to church and to the doctor when he is sick. The father further testified that he spends time with the minor child and that he takes the minor child with him every place that he goes.
Additionally, the record reflects that the report of the court-appointed psychologist, who evaluated the mother, recommended that her minor children not be returned to her until she has stabilized herself for an extended period of time. The record reflects that the psychologist found that the mother was going through the motions of AA but that she did not seem committed because the mother continues to deny that alcohol is a significant problem. The psychologist also recommended that the mother continue treatment and individual counseling.
The father argues that he met the McLendon standard and that the trial court erred in its custody determination. After reviewing the record, we are first required to determine whether the February 1993 order was a “custody” order or a “pendente lite” order, in order to ascertain the burden of proof applicable to the June 1993 hearing and order. A pendente lite order is generally entered only during the pendency of the litigation and is usually replaced by a final order or judgment at the end of the litigation. Sims v. Sims, 515 So.2d 1 (Ala.Civ. App.1987). “[A] pendente lite order ... *946 clearly envisions a temporary disposition of custody pending a later determination of the custody dispute.” Id. at 2. Whereas a “custody” order is final, subject to change by the court when the facts and law before the court indicate that a change is required, and is “generally intended to remain in effect until one of the parties succeeds in a petition requesting the court to modify its custody award.” Ex parte J.P., 641 So.2d 276 (Ala. 1994) (citation omitted). The trial court stated in its February 1993 order:
“It is the finding of this Court that there has been a change in circumstance and that the lifestyle of the mother has continued to deteriorate, with said child being left without appropriate supervision, and the mother has continued to abuse alcohol, and the child has not received appropriate care.
“Therefore, in the interest of [E.A.B.], it is ORDERED that custody of [E.A.B.] is awarded unto the father, [C.A.B.]_ As legal custodian of said child, [C.A.B.] is authorized by this Court to seek and consent to medical treatment, emergency or otherwise, to provide for the needs of the child, ... and to enroll said child in any and all schools.... ”
The trial court also authorized the father to permit the minor child to travel and visit outside of Mobile County and the State of Alabama. The trial court also set the matter for further review. At the time of the February 1993 hearing, the minor child was approximately one-year of age, which is important in the context of the trial court’s authorizing the father to enroll the minor child in school in future years and indicates that it was not a temporary disposition of custody pending a later determination of the custody dispute. Consequently, we find that the February 1993 order was a “custody” order. Our supreme court has held that the reason for the McLendon standard is that “the idea that uprooting children and moving them can be very traumatic.... [and that] ‘[flrequent disruptions [in custody] are to be condemned.’” Ex parte J.P., supra, quoting McLendon, 455 So.2d at 866 (citation omitted). The trial court’s order of June 1993 was a disruption in custody and required the uprooting of the minor child and, therefore, it was necessary for the mother to file a petition for modification of custody and meet the McLendon standard before the trial court could award her custody of the minor child. In this case, the mother did not file a petition for modification of custody and, therefore, the trial court abused its discretion by returning custody of the minor child to the mother.
The judgment of the trial court is reversed and this cause remanded to the trial court for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, J., concurs in the result.
THIGPEN, J., dissents.